IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAE SCHIFF,

        Plaintiff,                        12cv0264
                                                **ELECTRONICALLY FILED**
        v.

DENNIS J. HURWITZ, M.D., ET AL.,

        Defendants.

**Memorandum Opinion Denying Defendants' Motion To Dismiss (Doc. No. 10)**

### I.  Introduction

Presently before this Court is the Motion to Dismiss filed by Defendants Dennis J. Hurwitz, M.D. ("Dr. Hurwitz") and Hurwitz Center for Plastic Surgery, P.C. ("Hurwitz Center"). Doc. No. 10.  Specifically, Defendants seek to dismiss Count XI asserting a violation of Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL").  Doc. No. 1, 79.  The Court has reviewed Plaintiff's Complaint (Doc. No. 1), Defendants' Motion to Dismiss (Doc. No. 10) and Brief in Support Thereof (Doc. No. 11) as well as Plaintiff's Brief in Opposition (Doc. No. 17).  For the reasons that follow, Defendants' Motion to Dismiss will be DENIED.

### II.  Statement Of The Facts

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, at this stage the Court accepts all of the factual allegations in the Complaint as true and all reasonable inferences are drawn in Plaintiff's favor.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Taking the Plaintiff's factual allegations as true solely for the purposes of this Memorandum Opinion, the facts of this case are as follows:

Plaintiff, Rae Schiff ("Schiff"), is an individual and resident of the State of Michigan. Doc. No. 1, ¶ 1. Defendant, Dr. Hurwitz, is a licensed physician and specialist in plastic surgery who maintains a medical office in Pittsburgh, PA. *Id.*, ¶ 2. Defendant, Hurwitz Center, is a Pennsylvania Professional Corporation providing medical services with its principal place of business located in Pittsburgh, PA. *Id.*, ¶ 4. Plaintiff is asserting a medical professional liability claim against Defendants, Dr. Hurwitz and Hurwitz Center. *Id.* at ¶¶ 2-4.

On April 23, 2009, during an initial consultation with Schiff, Dr. Hurwitz planned surgery in two stages—stage one would include a "tummy tuck" and stage two would include a lower body lift. *Id.*, ¶ 72. On December 1, 2009, Schiff spoke with Dr. Hurwitz about dividing the operations into smaller procedures; however, Dr. Hurwitz never discussed nor documented the potential risk of the device used to perform these procedures, the Radio-Frequency Assisted Lipolysis ("RFAL"). *Id.*, ¶ 74.

On March 2, 2010, Schiff was given pre-operative markings, and according to Dr. Hurwitz's chart, RFAL was discussed with Schiff but not the specific risks of the procedure. *Id.*, ¶ 76. Schiff additionally avers that no conversation concerning the consent form between her and Dr. Hurwitz were discussed; more specifically, Dr. Hurwitz allegedly failed to document the fact that Schiff knew of the risks, benefits, and alternatives to the procedure, or that she was aware that the Invasix Device[1] was being investigated in a clinical trial. *Id.*, ¶ 77.

On March 3, 2010, Dr. Hurwitz performed a "BodyTite Procedure"[2] on Schiff using the Invasix Device. *Id.*, ¶¶ 78-79. Prior to surgery, Schiff was presented with an informed consent

---

[1] The "Invasix Device" is described as a RF (radio frequency) device and method for thermal fat destruction and skin tightening. Doc. No. 1, ¶ 6.

[2] "BodyTite Procedure" refers to the numerous procedures Dr. Hurwitz performed on Schiff on March 3, 2010. See Doc. No. 1, ¶ 79(a) – (d).

form ("Consent Form") authorizing the "BodyTite Procedure" which was already signed and dated 3/2/2010 by Dr. Hurwitz. *Id.*, ¶¶ 81-82; *see also* Doc. No. 1, Ex. 4. Schiff avers that neither Dr. Hurwitz nor any of his staff reviewed the Consent Form with her—including all risks, benefits and alternatives—and Schiff was not given an opportunity to ask questions about the procedure. *Id.*, ¶ 83.

During the procedure, Dr. Hurwitz was serving as an investigator for the Invasix Device in a clinical trial sponsored by Invasix and approved by Essex Institutional Research Board. *Id.*, ¶ 80. Schiff was unaware that Dr. Hurwitz was a paid investigator for the Invasix Device, that the Invasix Device was being used in a clinical trial sponsored by Invasix, and that the Food and Drug Administration ("FDA") neither was unaware nor approved of the clinical trial of the Invasix Device. *Id.*, ¶¶ 86-87.

Prior to the "BodyTite Procedure" on March 3, 2010, Dr. Hurwitz failed to disclose to Schiff that: (1) she was not a candidate for the procedure due to the clinical study's protocol; (2) the clinical study's protocols limited the Invasix Device from being used on more than three areas of the body; and (3) Schiff could be paid for her participation as a subject of the investigation of the "BodyTite Procedure." *Id.*, ¶¶ 88-90.

On March 9, 2010, approximately six days after surgery, Schiff complained of increased pain, swelling, and fever during her first post-op visit to Dr. Hurwitz's office. *Id.*, ¶ 91. Over the course of several subsequent days, Schiff had increased pain on all areas of her body in which the procedure was performed and began taking medication prescribed by Dr. Hurwitz. *Id.*, ¶ 93.

By Mid-April 2010, Schiff's pain was uncontrollable even with prescribed medication including oxycodone, Lorazepam, Neurontin, Tramadol, and Volatren. *Id.*, ¶ 94. The procedures performed by Dr. Hurwitz left Schiff with irregular scars and scar tissue, and in

August of 2010, she was diagnosed with having developed a thermal mediated demyelination of the sensory and autonomic nerves in the thighs leading to a diffuse post RFAL dysesthesia of the thighs and lymphatic system compromise. *Id.*, ¶¶ 95, 97. Schiff avers that her injuries were the direct and proximate result of negligence of each defendant. *Id.*, ¶ 98.

### III. Standard Of Review

In considering a Motion to Dismiss brought pursuant to Fed. R. Civ. Pr. 12(b)(6), federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly*, 550 U.S. 554 and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must take three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 662).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims

are sufficient to show a "plausible claim for relief." "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.*; *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, the Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Services, Inc.*, 346 Fed. App'x. 774, 776 (3d Cir. 2009).

In short, the Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him to relief. *Twombly*, 550 U.S. at 563 n.8.

### IV. Discussion

Defendants assert that Plaintiff's claim (at Count XI) under the UTPCPL should be dismissed because the General Assembly did not intend the Act to apply to physicians rendering medical services. *See* Doc. No. 11. The UTPCPL provides a private cause of action for purchasers of goods or services an ascertainable loss of money or property as the result of "unfair and deceptive acts or practices." 73 P.S. § 201-9.2(a). The UTPCPL defines "unfair or deceptive acts or practices" as:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have. . . .
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding.

73 P.S. § 201-2(4).

The Court must apply the substantive law of Pennsylvania. 28 U.S.C. § 1652; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). However, there is no Pennsylvania Supreme Court precedent setting forth the applicability (or inapplicability) of UTPCPL to the claims at issue herein, and the Pennsylvania Superior Court cases cited by Defendants are factually dissimiliar to the case at bar.[3] In attempting to predict how the Pennsylvania Supreme Court would rule, the Court may rely on decisions of state intermediate appellate courts, federal courts interpreting state law, and analogous decisions. *Norfolk S. Ry. Co. v. Basell USA Inc*. 512 F.3d 86, 91-92 (3d Cir. 2008).

The Pennsylvania Supreme Court has stated that the purpose of the UTPCPL is to protect the public from and eradicate "unfair and deceptive business practices." *Commonwealth v. Monumental Props.*, 329 A.2d 812, 815-17 (Pa. 1974). The goal of the UTPCPL is to place consumers and sellers of goods and services on equal terms, and the Pennsylvania Supreme Court has stated that Courts should construe the statute liberally to further its remedial goals. *Id*. at 816–17; *accord Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007); *see also Genter v. Allstate*, 2011 WL 253075 (W.D. Pa. June 24, 2011).

---

[3] In *Gatten v. Merzi*, 579 A.2d 974 (Pa. Super. Ct. 1990), plaintiff sued a surgeon under UTPCPL for allegedly misrepresenting the approval, standards and possible results of an operation to assist in weight loss. *Id.* The Court in *Gatten* stated that "even though the [UTPCPL] Act does not exclude services performed by physicians, it is clear that the Act is intended to prohibit unlawful practices relating to trade or commence and of the type associated with business enterprises." *Gatten*, 579 A.2d at 975-76. However, in *Gatten*, plaintiff's cause of action was based upon pre-operative statements made to her and the probable results of the treatment. *Id.* at 976. Whereas, here, the issue in this case is Defendants' alleged failure to disclose several material elements of the procedure associated with the Invasix Device, including Dr. Hurwitz alleged failure to disclose the dangers of the operation *as well as the clinical experiment that was taking place on the Invasix Device itself.*
Defendants also reference *Walter v. Magee-Women's Hospital of UPMC Health Sys.*, 876 A.2d 400 (Pa. Super. Ct. 2005), in which plaintiff asserted a UTPCPL claim based on defendant hospital's issuing of a pap smear report that falsely claimed to be reviewed by physicians. *Id*. at 402-03. The Court in *Walter* stated that Pennsylvania courts do not apply UTPCPL cases to providers of medical service. *Id.* at 407. However, the *Walter* case was a putative class action lawsuit for misleading patients into thinking certain reports were reviewed by physicians. Another critical difference between the present case and the cases cited by defendants are that neither of them involve the use of investigational devices, and Dr. Hurwitz's failure to advise plaintiff that the Invasix Device was investigational and his affirmative representation that the device was "safe and effective."

Under the UTPCPL, a Plaintiff must show that she justifiably relied on Defendant's wrongful conduct or representations and that [s]he suffered harm as a result of that reliance. *See Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001); *see also Lewis v. Ford Motor Company*, 263 F.R.D. 252, 262 (W.D. Pa. 2009). Here, Schiff avers that confusion and deceptive conduct surrounded the affiliation, connection, and association Dr. Hurwitz had with the Invasix Devices and the "BodyTite Procedure" as well as Plaintiff's lack of knowledge of the clinical trial involving the Invasix device. Doc. No. 1, ¶ 193. Furthermore, along with numerous other averments concerning a UTPCPL violation, Dr. Hurwitz allegedly failed to warn Schiff of the potential dangers of the Invasix Device and, critically, allegedly misrepresented that the FDA approved, or was at least involved in the clinical trial, of the Invasix Device. *Id.*, ¶ 195.

Here, Schiff alleges that Defendants failed to warn that the Invasix Device may cause thermal injury to cells, tissues, lymphatic systems and nerves of the body, which she alleges subsequently result in her injuries. Doc. No. 1, ¶ 195. Accordingly, for the reasons discussed, at this stage of the proceedings, this Court finds that Plaintiff has set forth a valid claim under the UTPCPL.

**V. Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss will be DENIED. An appropriate Order follows.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties